IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NOVELL INC., a Delaware corporation,<br><br>                      Plaintiff,<br>vs.<br><br>MARVELL SEMICONDUCTOR, INC.,<br>a California corporation,<br><br>                      Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No.  2:09CV674 DAK |

This matter is before the court on (1) Defendant Marvell Semiconductor, Inc.'s ("Marvell") Motion for Summary Judgment, (2) Plaintiff Novell, Inc.'s ("Novell") Motion for Summary Judgment on Breach of Contract Claim; (3) Marvell's Motion to Strike Portions of the Declarations of Kirt Melling and Jim F. Lundberg; and on (4) Defendant Marvell's "Objections" to Evidence Filed in Support of Plaintiff's Reply Memoranda.  A hearing on the motions for summary judgment was held on January 6, 2012.  At the hearing, Marvell was represented by James S. Lowrie and Brent A. Orozco.. Novell was represented by Heather M. Sneddon and Richard A. Kaplan.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and Order

**BACKGROUND**

In this unique case, Marvell acquired a major business division of Intel Corporation

("Intel") that included the acquisition of 1400 computer servers running on Novell's proprietary SUSE Linux.  Because Marvell uses its own proprietary operating environment and does not use SUSE Linux, Marvell decided to migrate the data and processes from the Intel Servers that used the SUSE Linux environment to new servers purchased from Dell that had the Marvell environment installed on them.  The anticipated migration period was approximately three to twelve months.

Marvell therefore purchased, among other things, an annual SUSE Linux license subscription from Dell, Incorporated ("Dell"), a license and software reseller for Novell.  Marvell also believed it had purchased some level of support services from Dell for the one-year period in which it would need the license to complete the migration of data and processes from the 1400 servers it had purchased from Intel.

For reasons that are not clear from the record, Novell contacted Marvell after Marvell had arranged with Dell for the purchase of the licenses.  Apparently, Novell believed that Marvell would need support services, and therefore it sought to enter into an agreement in which Marvell would purchase, among other things, a premium level of support services for three years from Novell.

According to Marvell, however, Novell simply stated that it needed additional paperwork to get Marvel into its system, and no one mentioned that Novell was proposing to change the terms of Marvell's contract with Dell.  James Duke, a Novell representative, sent an email to Walter Curd, Marvell's IT Director, on November 17, 2006 in which he thanked Marvell for "purchasing SUSE Linux" and explained that "Novell and Marvell need to have an agreement

2

for Novell to process" Marvell's purchase. Believing that any remaining paperwork was simply administrative, Mr. Curd, asked Mr. Duke to work with Mr. Kishore Fernandes.

Mr. Fernandes met with Mr. Duke for a short meeting in Marvell's lobby, and, according to Mr. Fernandes, no agreements were discussed, and no papers were exchanged. Mr. Fernandes testified that he specifically told Mr. Duke that Marvell was not interested in a separate support agreement with Novell.[1] Mr. Fernandes understood that the purpose of the meeting was that Novell needed to finish some formalities (i.e., his contact information) to get Marvell on the support system and that Marvell had already bought everything they needed from Dell.

Subsequently, Mr. Duke sent an email to Mr. Fernandes stating:

> Attached, please find the documents for the agreement.
>
> Let us try to sign it ASAP. Then you will be able to use the software
> And we can support you appropriately.
>
> The meat of the deal is in the doc you have a copy of.
>
> Please let me know if you have any questions.

Attached to the December 11, 2006 email were documents entitled Novell Linux Indemnification Program Addendum, Schedule to the Novell Linux Enterprise License Agreement, Exhibit 1 Technical Support Group, and Novell Linux Enterprise License Agreement

---

[1] Novell disagrees, claiming that Mr. Fernandes repeatedly admitted in his deposition that Marvell needed support. But the court does not find Mr. Fernandes's to be that clear. What is clear from Mr. Fernandes's testimony is that *Intel* told Marvell that Marvell would need support–and Intel could not provide it–and that Marvell believed it had some support from Dell in conjunction with its purchase of the licenses.

(collectively the "ELA").  Mr. Fernandes testified that, based on the representations of Mr. Duke, he did not read the documents but filled out the requested contact information and gave the documents to Mr. Curd to sign.

Almost three months passed before Mr. Curd signed the ELA, and he did so without reading it.  He testified that he also believed that they were simply administrative paperwork that Novell needed to finalize Marvell's purchase from Dell, as represented by Mr. Duke in his November 17, 2006, email.  No one at Marvell realized that the agreement tripled the price of the original purchase of licenses from Dell and that it tripled the duration of the original Dell agreement.  Mr. Curd testified that he would not have signed the agreement had he known that it was different from the Dell agreement because Marvell did not have any need for a three-year agreement and because he would not have had authority to enter into a contract for that amount of money.

Marvell has sought summary judgment on its defenses to Novell's breach of contract claim and on Novell's claim for breach of the implied covenant of good faith and fair dealing. Marvell argues that the purported agreement between Marvell and Novell is no agreement at all because the parties did not have a meeting of the minds with respect to key terms of the agreement.  Specifically, Marvell argues that there was no intent to contract or to alter the terms of the Dell contract, and thus the court should find that there is no enforceable contract with Novell.  Marvell also contends that even if the ELA is viewed as a contract, it should be reformed or rescinded based upon a mutual mistake shared by both parties because neither party realized it was executing a document that was inconsistent with the original purchase terms of

4

the Dell agreement. According to Marvell, this mistake of the parties allows the court to reform the ELA to conform to the original intent of the one year Dell deal. Marvell also argues that the execution of the ELA also fails to accomplish a novation, as it believes Novell alternatively contends.[2] Finally, Marvell contends that Novell's alternative claim for breach of implied covenant of good faith and fair dealing also fails because Novell cannot use the covenant to change the terms of the Dell Agreement.

Novell, on the other hand, not only opposes Marvell's Motion for Summary Judgment, but it also seeks summary judgment on its breach of contract claim, contending that no genuine issue of material fact exists to preclude the court from finding that the ELA is valid and biding agreement, that Novell fully performed its obligations, and that Marvell breached the agreement by filing to pay the second and third annual payments.

## DISCUSSION

"It is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract." *Richard Barton Enters. v. Tsern*, 928 P.2d 368, 373 (Utah 1996). "An agreement cannot be enforced if . . . there was no intent to contract." *Id*. at 373 (citations omitted). Generally, however, each party to a contract

> has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense. This rule is based upon the panoply of contract law upholding the principle that a party is bound by the contract which he or she voluntarily and knowingly signs.

---

[2] Novell clarified that it has not suggested that the ELA is s novation of the Dell purchase, and thus the court will not address this theory.

*John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987) (internal citations omitted). In *John Call Engineering,* the Utah Supreme Court relied on a previous decision in which it emphasized that

> [i]gnorance of the contents of an instrument does not ordinarily affect the liability of one who signs it.... If a man acts negligently and in such a way as to justify others in supposing that the writing is assented to by him, he will be bound both at law and in equity, even though he supposes the writing is an instrument of an entirely different character.... [A] person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without reading it, *at least in the absence of special circumstances excusing his failure to read it.* If the contract is plain and unequivocal in its terms, he is ordinarily bound thereby.

*John Call Eng'g*, 743 P.12 at 1208 (quoting *Garff Realty Co. v. Better Bldgs., Inc.*, 234 P.2d 842, 844 (1951) (emphasis added)). In an earlier case, the Utah Supreme Court stated that "[t]he better view seems to be that a person will be given relief . . . even though he failed to read the contract before signing if he was by some act or artifice induced to refrain from reading it, or if because of the circumstances he was justified in relying on the representations made." *Johnson v. Allen*, 158 P.2d 134, 153-54 (Utah 1945). "[E]ach case must be considered on its own facts, and every case will have peculiarities of its own, by which it may be judged." *Id*. at 153.

In light of the case law and evidence presented, the court declines grant either party's motion for summary judgment. The court cannot rule, as a matter of law (1) that the ELA is a valid and enforceable contract; or (2) to the contrary, that the ELA is unenforceable based upon a lack of intent to contract and/or because Marvell's failure to read the ELA is excused by "special

circumstances," or (3) that the ELA should be reformed on the basis of a mutual mistake.[3] Thus, both party's motions for summary judgment are denied.

A jury must decide whether "special circumstances" exist to excuse Marvell's failure to read the contract, rendering the contract between Marvell and Novell unenforceable. If a jury finds that the "special circumstances" exception does not apply in this case, then it must decide whether the contract should be reformed on the basis of a mutual mistake. Finally, if the jury finds that the ELA is enforceable and that there was no mutual mistake, it will also address (1) whether Novell performed under the contract during the last two years of the contract; (2) whether Novell failed to mitigate its damages;[4] and (3) whether Marvell breached an implied covenant of good faith and fair dealing.

---

[3] Mutual mistake warrants the reformation of written instruments if the Marvell party can show:
> (1) that the instrument as made failed to conform to what both parties intended; or
> (2) that the claiming party was mistaken as to its actual content and the other party, knowing of this mistake, kept silent; or (3) that the claiming party was mistaken as to actual content because of fraudulent affirmative behavior.

*Peterson v. Coca-Cola* USA, 48 P.3d 941, 947 (Utah 2001) (quoting *Mabey v. Kay Peterson Constr. Co.*, 682 P.2d 287, 290 (Utah 1984)).

[4] Marvell has moved to strike paragraph 23 of the Melling Declaration and paragraph 9 of the Lundberg Declaration, in which each individual states that mitigation was not possible. Marvell contends that this is a legal conclusion and not a fact. The court declines to strike these paragraphs, as the court has views this as the individuals' perceptions and not conclusions of law. In addition, the court declines to rule on Marvell's "Objections," Docket No. 98, because even if the court considered the testimony at issue, the court still finds that there are genuine issues of material fact on the issues of performance and mitigation that will need to be decided by a jury in the event that a jury finds that Marvell breached an enforceable contract.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Marvell's Motion for Summary Judgment [Docket No. 59] is DENIED; Novell's Motion for Summary Judgment on the Contract Claim [Docket No. 67] is DENIED; Marvell's Motion to Strike Portions of the Declarations of Kirt Melling and Jim F. Lundberg [Docket No. 80] is DENIED; and (4) Defendant Marvell's "Objections" to Evidence Filed in Support of Plaintiff's Reply Memoranda are MOOT.

The court had previously vacated all upcoming deadlines in this case, and therefore, counsel are directed to contact the court to schedule a jury trial. The court will issue a Trial Order approximately six weeks before the trial, setting deadlines for motions in limine, proposed jury instructions, proposed verdict forms, and proposed voir dire.

DATED this 30th day of March, 2012.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge